IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAGELLAN GROUP INVESTMENTS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> FIRST INDIGENOUS DEPOSITORY COMPANY, LLC, <br><br> Defendant. _____ / | No. C 05-01994 JSW (MEJ) <br><br> **REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

## I. INTRODUCTION

Before the Court is Plaintiff's Motion for Default Judgment, filed on August 4, 2005. After careful consideration of Plaintiffs' papers, relevant statutory and case law authority, and Good Cause appearing, the Court hereby RECOMMENDS that the District Court GRANT default judgment against Defendant for the reasons set forth below.

## II. BACKGROUND

**A.      Factual Background**

The following factual background is taken from Plaintiff Magellan Group Investments' (Magellan's) Complaint and moving papers. On or about November 23, 2004, Magellan and Defendant First Indigenous Depository Company ("FIDC") entered into a Line of Credit Loan Agreement (the "Loan") whereby Magellan agreed to loan FIDC up to twelve million dollars ($12,000,000.00) in the form of

United States District Court
For the Northern District of California

periodic loan advances. The Loan is evidenced by a Secured Promissory Note ("the Promissory Note"). The parties also entered into a Security Agreement whereby, as a condition of Magellan making the Loan, FIDC granted Magellan a security interest in certain collateral ("the Collateral") comprising virtually all of FIDC's personal property, including but not limited to, all of FIDC's accounts, general intangibles, inventory, equipment, investment property, letters of credit and intellectual property then owned or thereafter acquired by FIDC.

On or about December 7, 2004, Magellan funded into an escrow account, at FIDC's direction, the original principal amount of $4,100,000.00 in accordance with the Loan. In so doing, FIDC incurred a 1% loan origination fee of $41,000.00, as per the terms of the Loan. FIDC failed to make the first interest payment due on December 25, 2004, as well as the next interest payment due on January 25, 2005. Magellan recovered $3,700,000.00 from the escrow account on January 20, 2005, leaving the outstanding principal amount of $441,000.00 plus the accrued interest that FIDC failed to pay still owing.

On February 16, 2005, Magellan gave Notice of Default to FIDC, and declared FIDC's indebtedness to be accelerated as allowed under the Promissory Note. The Notice of Default itemized the amount due as of February 16, 2005 as $545,619.00.

On February 23, 2005, Magellan recovered an additional $50,000.00 from the escrow account, leaving the total amount due as $495,619.00. Then on June 9, 2005, Magellan recovered an additional $6,981.61 from the escrow account, which was the remaining balance, and which was applied to accrued interest. The escrow account was then closed, leaving an outstanding principal balance of $495,619.00.

Under the terms of the Promissory Note, the interest rate on defaulted principal and interest after acceleration of the note is 25% per annum (the base rate of 20% plus 5% added after acceleration). Thus, the total interest due from February 16, 2005, to July 28, 2005, is $55,233.82. Accordingly, the total due from FIDC to Magellan as of July 28, 2005, is $543,871.21 ($495,619.00 + $55,233.82 - $6,981.61).

Magellan alleges that FIDC has defaulted on the Loan by failing to make any payments under the terms of the Promissory Note, and that under the terms of the agreement they are now entitled to recover the principal loaned, interest accrued to date, and their costs and attorney fees. Magellan further alleges

2

that they are entitled to possession of the collateral, a judgment of judicial foreclosure of said collateral, and to have the proceeds thereof applied to payment of the amount due Magellan by FIDC.

**B.     Procedural Background**

On May 16, 2005, Magellan filed a Complaint against FIDC for Breach of Contract, Breach of Promissory Note, Money Lent, Account Stated, Claim and Delivery and Judicial Foreclosure. The claims for breach of contract, breach of promissory note, money lent and account stated are based on FIDC's failure to make payments to Magellan provide by the terms of the Loan Agreement. Magellan's claims for claim and delivery and judicial foreclosure are based on their request that the Court grant them possession of the collateral by which the loan was secured. Magellan duly served FIDC with process in this matter on May 18, 2005.

On July 12, 2005, Magellan filed a Motion for Entry of Default. On July 13, 2005, the Clerk entered Default against FIDC.

On August 4, 2005, Magellan filed a Notice of Motion and Motion for Default Judgment, as well as the Declarations of Robert Fessler and Alan Greenberg in support thereof.

On August 5, 2005, the Honorable Jeffrey S. White referred Magellan's motion to a magistrate judge to prepare a report and recommendation.

On October 28, 2005, the Court held a hearing on this matter. FIDC failed to appear at the hearing and has made no other appearance in this matter.

### III.     DISCUSSION

**A.     Personal and Subject Matter Jurisdiction**

When a court is considering whether to enter a default judgment, it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). Here, FIDC is a California corporation, so the Court may exercise personal jurisdiction. Moreover, because Magellan is a Florida company, this Court has subject matter jurisdiction based on diversity of citizenship

pursuant to 28 U.S.C. § 1332.

**B.    Legal Standard**

Federal Rule of Civil Procedure ("FRCP") 55(b)(2) permits a court, following a default by a defendant, to enter a final default judgment in a case. The court has discretion in determining whether to grant or deny a motion for entry of default judgment. *Draper v. Coombes*, 792 F.2d 915, 924 (9th Cir. 1986); *see also Kingvision Pay-Per-View, Ltd. v. Rivers*, 2000 WL 356378, *1 (N.D. Cal. 2000). "Generally, upon an entry of default, the factual allegations of the Plaintiff's Complaint will be taken as true." *Id.* "For a default judgment, well-pleaded factual allegations are sufficient to establish a defendant's liability. However, the allegations of the Complaint regarding the amount of damages suffered are not controlling." *Kingvision Pay-Per-View, Ltd. v. Backman, et al.*, 102 F. Supp. 2d 1196, 1197 (N.D. Cal. 2000) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products*, 722 F. 2d 1319, 1323-24 (7th Cir. 1983); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the Plaintiff, (2) the merits of Plaintiffs' substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong public policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Where a default judgment is granted, the scope of relief is limited by Federal Rules of Civil Procedure 54(c) and 55(d). "A judgment shall not be different in kind from or exceed in amount that prayed for in the demand for judgment" in the complaint. Fed. R. Civ. P. 54(c), 55(d).

**C.    Legal Analysis**

The Court applies the following factors as articulated by the Ninth Circuit. *Eitel*, 782 F.2d at 1471-72.

First, the Court examines the possibility of prejudice to Magellan if default judgment is not granted. Here, Magellan and FIDC entered into an agreement under which Magellan advanced funds to FIDC in the

4

form of a line of credit. FIDC availed itself of that line of credit and under the terms of the agreement was required to repay the obligation in monthly installments. If FIDC had complied with the terms of the agreement, Magellan would have had use of the funds it was due and would not have incurred attorney's fees and costs in its attempt to enforce the agreement. Thus, the Court finds that Magellan would suffer prejudice if default judgment is not granted as FIDC's actions would continue to cause harm to Magellan, including the continued loss of the money advanced to FIDC.

Second, the Court looks at the merits of Magellan's substantive claim, and third, the Court looks at the sufficiency of the complaint. The Ninth Circuit has suggested that these two factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund,* No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb 13, 1996) (citing *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978)). In reviewing Magellan's complaint, motion for default judgment, declarations and attached exhibits, the Court finds that Magellan has clearly established a valid claim for recovery by alleging a breach of contract in that: (1) Magellan and FIDC entered into a loan contract; (2) Magellan performed its obligation as per the terms of the agreement; and (3) FIDC failed to honor its obligation when it failed to make scheduled payments as required by the terms of the contract. Thus, based on the pleadings, Magellan is entitled to damages as requested.

Fourth, the Court looks at the sum of money at stake in the action. This factor is meant to focus on the size of the award requested, as courts are hesitant to enter default judgments where large sums of money are at stake. *Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2nd Cir. 1986) ("court could have considered whether the entry of default would lead to a harsh result or to the entry of a large money judgment."). However, the *Eitel* court relied in part on the fact that the plaintiff was seeking "almost $3 million in damages" in holding that the district court did not abuse its discretion in denying a default judgment. *Eitel*, 782 F.2d at 1472. Here, while the sum at stake is not small ($543,871.21 plus interest due after July 28, 2005), it is the actual amount owed to Magellan by FIDC under the terms of the agreement. Furthermore, the original loan principal that FIDC withdrew from the escrow account ($400,000.00) comprises most of the sum at stake. An award of the amount prayed for in this case would

put Magellan in essentially the same position as it would be if FIDC had not defaulted. Thus, the Court finds that it would not be an abuse of the District Court's discretion to award the requested amount in this case, and this factor does not mitigate against the entry of a default judgment.

The fifth factor of consideration is the possibility of a dispute concerning material facts. Here, Robert Fessler and Alan Greenberg each provided declarations in support of Magellan's motion for default judgment. In his declaration, Mr. Fessler included signed copies of the Loan Agreement, Promissory Note and Security Agreement, as well as a copy of FIDC's instructions to fund the escrow account. Also included is the Notice of Default that Mr. Fessler gave to FIDC on February 16, 2005, wherein Magellan declared FIDC's indebtedness to be accelerated as allowed under the terms of the Promissory Note. The Court notes that FIDC has failed to respond to any allegation in the Complaint, nor did FIDC file any opposition to Magellan's motion for default judgment. Accordingly, the Court finds that FIDC has shown no dispute concerning material facts.

Sixth, the Court examines whether the default was due to excusable neglect. The *Eitel* opinion makes clear that this factor is directed at determining whether FIDC had cause for neglecting to file a timely response to the Complaint. *Eitel*, 782 F.2d at 1472. In *Eitel*, the court found excusable neglect where the defendant did not file a timely answer due to a belief that the case had settled before his answer was due. *Id*. That is clearly not the case here where, despite being duly served with the Complaint over three months ago, FIDC has failed to make any appearance whatsoever in this case. Accordingly, there are no grounds upon which this Court can find that the default resulted from excusable neglect.

Finally, the Court must make its determination in light of the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Although it is favorable to resolve cases on their merits, the case at hand does not warrant a denial of default judgment solely on that ground. However, at this juncture the Court does not find just cause to award Magellan possession of the collateral, which comprises most if not all of FIDC's assets. The Court finds that awarding the monetary amount would put Magellan in essentially the same position as it would have been had FIDC not defaulted, making an award of the collateral excessive in light of this factor. Accordingly, the Court hereby RECOMMENDS that the

6

District Court grant Magellan's Motion for Default Judgment to include a money judgment, but not a judgment for possession of the subject collateral.

### IV.   CONCLUSION

Based on the foregoing analysis, the Court hereby RECOMMENDS that the District Court GRANT Plaintiffs' Motion for Default Judgment in the following amounts: (a) $543,871.21 in principal and interest through July 28, 2005; (b) interest due to present; and (c) attorneys fees and costs to be determined upon submission of a bill of costs and motion for attorney fees, to be filed within 14 days of entry of judgment. The Court does not recommend a judgment for possession and foreclosure of the collateral.

Pursuant to Fed.R.Civ.P. 72, a party may serve and file objections to this Report and Recommendation within 10 days after being served with a copy of said report.

**IT IS SO RECOMMENDED.**

Dated: November 3, 2005

MARIA-ELENA JAMES
United States Magistrate Judge

7